**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DANIELS SHARPSMART, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case no. 1:17-CV-06940** |
| | ) | |
| **v.** | ) | |
| | ) | **The Hon. Matthew F. Kennelly** |
| **BECTON, DICKINSON AND** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

**DEFENDANT/COUNTERCLAIMANT BECTON, DICKINSON AND
COMPANY, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF
COUNTER-DEFENDANT DANIELS SHARPSMART'S MOTION TO
DISMISS THE COUNTERCLAIM**

---

EPSTEIN BECKER & GREEN, P.C.
One Gateway Center, 13th Floor
Newark, New Jersey 07102
Tel: (973) 642-1900
Fax: (973) 642-0099
jflynn@ebglaw.com
Attorneys for Defendant

Of Counsel and On The Brief:
    James P. Flynn
    Jennifer Barna

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS .........................................................................................................2

LEGAL ARGUMENT................................................................................................................7

POINT I .....................................................................................................................................7

      APPLICABLE STANDARDS ON THIS MOTION TO DISMISS FAVOR
      DENIAL OF THE MOTION BECAUSE WHETHER OR NOT A CLAIM
      IS EITHER 'FALSE' OR 'MISLEADING' IS A FACTUAL ONE
      DEPENDENT ON CONTEXT

POINT II ....................................................................................................................................9

      THE COURT CANNOT CONCLUDE AS A MATTER OF LAW THAT
      DANIELS' SAFETY AND ENVIRONMENTAL CLAIMS ARE MERE
      PUFFERY, ESPECIALLY WHERE THE COURT MUST CONSTRUE
      THE COUNTERCLAIM IN THE LIGHT MOST FAVORABLE TO BD,
      ACCEPTING AS TRUE ALL OF BD'S FACTUAL ALLEGATIONS AND
      DRAWING ALL PLAUSIBLE INFERENCES
      IN BD'S FAVOR

      A.    Daniels' Safety Claims Are False, Misleading, Unsubstantiated
          and Actionable ...................................................................................11

      B.    Daniels' Environmental Claims Are False, Misleading, Unsubstantiated
          and Actionable ...................................................................................13

POINT III...................................................................................................................................14

      GRANTING THE MOTION TO DISMISS THE COUNTERCLAIM
      WOULD CREATE LAW OF THE CASE AND JUDICIAL ESTOPPEL
      REQUIRING DISMISSAL OF THE COMPLAINT AS WELL

CONCLUSION...........................................................................................................................15

Firm:45400632v1

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adkins v. Nestle Purina PetCare Co.*,
  973 F.Supp. 2d 905 (N.D. Ill. 2013) .............................................................................11, 12

*Balik v. Blitt & Gaines, P.C.*,
  2015 U.S. Dist. LEXIS 20869, 2015 WL 764013 (N.D. Ill. 2015) (Kennelly,
  J.)..........................................................................................................................................9

*Castrol Inc. v. Pennzoil Co.*,
  987 F.2d 939 (3d Cir. 1993)............................................................................................8, 12

*Champion Laboratories, Inc. v. Cent. Il Mfg. Co.*,
  157 F. Supp. 3d 759, 763 (N.D. Ill. 2016) ...........................................................................8

*Church & Dwight Co. v. SPD Swiss Precision Diag.*,
  104 F. Supp. 3d 348, 357-362 (S.D.N.Y. 2015) ..................................................................11

*Delux Cab v. Uber Techs., Inc.*,
  2017 U.S. Dist. LEXIS 57494 (S.D. Cal. 2017) ..................................................................12

*GC2 Incorporated v. International Game Technology PLC*,
  255 F. Supp. 3d 812, 818 (N.D. Ill. 2017) (Kennelly, J.) ................................................9, 11

*Geinosky v. City of Chicago*,
  675 F. 3d 743 745 ..................................................................................................................7

*Harcourt Brace Jovanovich Legal and Professional Publications, Inc. v.*
  *Multistate Legal Studies, Inc.*,
  26 F. 3d 948 (9th Cir. 1994) ..............................................................................................1, 14

*Hot Wax, Inc. v. Turtle Wax*,
  191 F.3d 813 (7th Cir. 1999) ...............................................................................................10

*Kovacs v. United States*,
  739 F.3d 1020 (7th Cir. 2014) .............................................................................................14

*LA Taxi Cooperative v. Uber Technologies*,
  114 F.Supp. 3d 852, 861-62 (N.D. Cal. 2015).................................................................11, 12

*LG Electronics USA, Inc. v. Whirlpool Corp.*,
  661 F. Supp. 2d 940 (N.D. Ill. 2009) ..............................................................................2, 8, 10

Firm:45400632v1

*New Hampshire v. Maine*,
532 U.S. 742 (2001) ...................................................................................................14

*Pom Wonderful LLC v. Coca-Cola Co.*,
134 S. Ct. 2228 (2014) ...............................................................................................11

*Ross v. Career Educ., Corp.*,
2012 U.S. Dist. LEXIS 155037 (N.D. Ill. 2012) (Kennelly, J.) ...........................2, 8

*In Re Rust-Oleum Restore Mktg., Sales Practices*,
155 F. Supp. 3d 772 (N.D. Ill. 2016) ..........................................................................8

*Shuffle Tech International LLC v. Scientific Games Corporation*,
2017 U.S. Dist. LEXIS 141445 (N.D. Ill. 2017) .......................................................14

*Stewart v. Evanston Insurance Company*,
2015 U.S. Dist. LEXIS 66825, 2015 WL 2451181 ...................................................14

*Thermal Design, Inc. v. Guardian Bldg. Prods.*,
2012 U.S. Dist. LEXIS 83301 (E.D. Wisc. 2012) ....................................................10

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales, Practices, and
Prods. Liab. Litig.*,
754 F.Supp.2d 1145 (C.D. Cal. 2010) .......................................................................12

*Tylka v. Gerber Prods. Co.*,
211 F.3d 445 (7th Cir. 2000) .....................................................................................12

*Tylka v. Gerber Products Co.*,
1999 WL 495126 (N.D. Ill. July 1, 1999)...........................................................12, 13

*Underground Solutions, Inc. v. Palermo*,
188 F. Supp. 3d 717, 726 (N.D. Ill. 2016) (Kennelly, J.) ...................................13, 14

*X-It-Products v. Walter Kiddle Portable Equipment*,
155 F.Supp. 2d 577 (E.D. Va. 2001) .........................................................................12

**Statutes**

15 U.S.C. § 1125(a)(1)(B) ...................................................................................................10

Federal Trade Commission Act, § 5 ...................................................................................13

Lanham Act................................................................................................................2, 9, 11, 13

**Other Authorities**

16 C.F.R. §§ 260.1–260.8 ...................................................................................................13

Firm:45400632v1

http://danielsinternational.com/customer-resources/brochure ...........................................7

https://www.danielshealth.com/ ...................................................................................4, 6

Rule 12(b)(6) ................................................................................................................7, 13

iv

Defendant/Counterclaimant Becton, Dickinson And Company, Inc. ("BD"), by the undersigned attorneys, submits this Memorandum In Opposition To Plaintiff Counter-Defendant Daniels Sharpsmart's Motion To Dismiss The Counterclaim. BD respectfully states as follows:

## PRELIMINARY STATEMENT

Daniels contends that safety-related advertising claims -- the very claims that underscore both BD's counterclaim and Daniels' own complaint – are, as a matter of law, mere non-actionable puffering and that a "'comparison' to a mystery rival is just puffery; it is not falsifiable and therefore is not informative." ECF # 19 (Plaintiff's Brief at 8). If that be the case, the Court should dismiss the entire action, claims and counterclaims, because Daniels' complaint is based on the same thing. "Sauce for the gander is sauce for the goose." *Harcourt Brace Jovanovich Legal and Professional Publications, Inc. v. Multistate Legal Studies, Inc*., 26 F. 3d 948, 952 (9th Cir. 1994) (holding that party seeking to enforce rights concerning advertising could not apply different standard to challenged advertising than was applied to party's own advertisements).[1]

Of course, Daniels' own moving brief and the authority upon which it relies (including a decision that Daniels fails to mention was vacated and remanded nearly 18 years ago) puts the lie to Daniels' argument. Daniels' advertising falsely and misleadingly claims Sharpsmart to be the "safest" product of its kind in the world, and to being a product that is "protecting healthcare workers" by fully "remov[ing] the risk of injury from your sharps containers," and also assuring

---

[1] As *Harcourt Brace,* 26 F.3d at 952, noted, "[t]he third ad referred only to our competition in accusing it of misrepresentation by nondisclosure. Multistate contends that there are 31 different bar review course businesses competing with Multistate in California and that the term "our competition" did not identify Bar/BRI, Gilberts, or Harcourt in any particular. Multistate makes the further point that the district court refused to find Harcourt in contempt when it ran an ad indirectly referring to Multistate. As to this ad, what is sauce for the gander must be sauce for the goose. If Harcourt did not offend the decree by its indirect reference neither did Multistate."

"no risks in transit," all of which results in "significantly reduc[ing] sharps' injuries", and to "sav[ing] lives." (ECF #1, Counterclaim at ¶11-15). By claiming these statements are mere puffery, Daniels admits that such claims lack substantiation. But by their very context those claims are express or implied claims of superiority, relative and absolute, compared to other products in the market. *Ross v. Career Educ., Corp.*, 2012 U.S. Dist. LEXIS 155037, *20-22 (N.D. Ill. 2012) ("as with all statements alleged to be materially misleading, this Court must take into account the context in which the statements were made to determine whether they amounted only to puffery.") (Kennelly, J.). And they are therefore actionable, and now (largely) indefensible as unsubstantiated. The Court should certainly deny any motion to dismiss such claims, as Daniels' advertising claims at the very least raise questions of fact. *Id.*; *see also LG Electronics USA, Inc. v. Whirlpool Corp.*, 661 F. Supp. 2d 940, 948 (N.D. Ill. 2009).

## STATEMENT OF FACTS

Daniels filed this action against BD on September 26, 2017 asserting false advertising claims under the Lanham Act and related state theories. ECF#1 (Complaint). Daniels and BD are competitors in the medical-sharps-container industry. *Id*. at ¶2. Those containers, commonly referred to as "sharps" containers, are used by hospitals and other medical and health-care facilities throughout the world to deposit and store used "sharp" medical waste, such as syringes. *Id*. There are two types of sharps containers: single-use (disposable) and reusable. Daniels manufactures and sells reusable containers. *Id*. at ¶3. Within the reusable-container industry, Daniels is one of a small number of such manufacturers and sellers that dominate that particular industry. *Id*. at ¶2. In fact, the term "reusable" has become synonymous with Daniels and this small group. *Id*. at ¶2.

Daniels complaints are directed at BD advertising targeting "concerns about reusable

sharps containers" being less safe than disposable ones. *Id.* at ¶6-7, 34. But Daniels identifies no BD advertising that refers expressly to Daniels or Sharpsmart. *Id.* at ¶3, 42, and Ex. E. Contradicting the position taken on this motion to the effect that a "'comparison' to a mystery rival is just puffery; it is not falsifiable and therefore is not informative," ECF #19 (Plaintiff's Brief at 8), Daniels' complaint asserts that generic references to "reusables" are "synonymous with Daniels and this small group" of other manufacturers and that comparisons to unnamed disposables are, "by extension," references to Daniels. ECF#1, at ¶3, 42.

BD answered, denying making any false or misleading claims in its advertising, and moved to dismiss extraterritorial claims and to dismiss redundant state common law claims. ECF #11-13 and 14. The motion was mooted in part when Daniels' counsel confirmed on the record on December 14, 2017 that Daniels sought no relief as to any extraterritorial advertising or alleged damages. ECF #16. The remainder of the motion to dismiss redundant state common law claims was preserved for later consideration. ECF #17.

BD's answer also contained counterclaims concerning Daniel's unsubstantiated advertising. This counterclaim stems from Daniels' false and misleading advertising concerning its "reusable Sharpsmart system", which Daniels misleadingly advertises, expressly or impliedly, as scientifically substantiated though there is either no such substantiation or dated testing is no longer relevant to a current market comparison. ECF #14, Counterclaim, ¶1. Daniels makes these baseless superiority claims, expressed through unsubstantiated comparative or superlative language characterizing its "reusable Sharpsmart system" as being "the world's safest," as being "safest in the world," as being "safer to use" than disposable systems or other reusable systems, as being "Safer –wherever you work," as being "the safer system," as being "safer for staff and patients" than disposable systems or other reusable systems, as meeting a "no risks" standard, as

Firm:45400632v1

providing a system that fully "removes the risk of injury from your sharps containers," and as being one that, compared with disposable systems or other reusable systems, "saves lives." ECF #14, Counterclaim, ¶2. These statements are false and/or misleading, in violation of law, and damaging to BD. ECF #14, Counterclaim,¶3.

In competing in the market place, Daniels used various advertising and marketing pieces, including but not limited to brochures such as the one attached to the Counterclaim as Ex. B and its website, which includes the materials attached to the Counterclaim as Exs. C and D. ECF #14, Counterclaim, ¶10. Daniels, in the Daniels' brochure attached as Ex. B and elsewhere (including but not limited to the website https://www.danielshealth.com/) makes numerous statements that expressly or impliedly claim that its "reusable Sharpsmart system" has been demonstrated through comparative testing and study to be superior to both other reusable systems and to disposable systems. *Id*. at ¶11. To wit, by way of example, that Brochure (Ex. B) portrays Sharpsmart:

    a.   As being the "safest in the world"



    b.   as being "Safer –wherever you work" than disposable systems or other reusable systems

    c.   as being "the safer system,"

    d.   as being "safer for staff and patients" than disposable systems or other reusable systems,

Firm:45400632v1

This claim is followed by express reference to a study supposedly establishing these safety claims through "dramatic findings":



Results from the largest international study of sharps containment systems were published in 2003 in the British *Journal of Hospital Infection*. These findings were dramatic, and showed that the Sharpsmart system reduced:

Container-related sharps injuries: ↓ 87%
Other sharps injuries: ↓ 26%
Total sharps injuries: ↓ 33%

e.  as meeting a "no risks" standard,



No risks in transit

f.  as providing a system that without qualification or limitation fully "removes the risk of injury from your sharps containers,"



The Circle of Safety gives you complete door-to-door sharps service that:
✓ Removes the risk of injury from your sharps containers

g.  as being one that, compared with disposable systems or other reusable systems, "saves lives."



✓ Saves lives: Sharpsmart's '3-Ps' significantly reduce sharps injuries;

*Id*. at ¶11(a) through (g).  There is a reference in Ex. B to a 2003 study in the British Journal of Hospital Infection, which reference is itself a false and misleading basis for making comparative claims in 2015 when one considers that it is outdated and provides no basis to Daniels for present comparative claims as many of BD's and other sellers sharps containers available today were not available in 2003 for comparison. *Id*. at ¶12.

Further, that study (T. Grimmond, et al., Sharps Injury Reduction using Sharpsmart—A Reusable Sharps Management System, British Journal of Hospital Infection, July 2003, Volume 54, Issue 3, Pages 232-238), is cited in Daniels' advertising as the "dramatic finding" supporting

5

the Daniels' claim that Sharpsmart reduced container related sharps injury by 87%--but that study stated expressly and clearly that "the low numbers" "precluded statistical significance in all but" one small subset of such injuries "in the Sharpsmart period," Ex. E, at page 6, meaning that the cited study did not in fact support the broad Daniels' claim. *Id*. at ¶13.

Daniels, in the Daniels' materials attached as Ex. C and elsewhere (including but not limited to the website https://www.danielshealth.com/), make numerous statements that expressly or impliedly claim that its "reusable Sharpsmart system" has been demonstrated through comparative testing and study to be superior to both other reusable systems and to disposable systems. *Id*. at ¶14 To wit, by way of example, Ex. C portrays Sharpsmart:

a. As "the world's safest,"



b. as being "safer to use" than disposable systems or other reusable systems,



*Id*. at ¶14(a) and (b). These same advertisements claim that the Daniel' system is "eco-friendly" and the "world's…most environmentally responsible sharps management system." *Id*. at ¶14(a) and (b). Other Daniels' advertising submitted with this response shows Daniels' advertising that using its system makes "our environment greener," "reduces environmental impact and cost," and is "environmentally responsible," all purportedly supported by studies and statistics.

Declaration of James P. Flynn, Ex. A.[2]

Daniels makes the advertisements claims to which BD quotes in paragraphs 11 and 14 of the Counterclaim without substantiation, though Daniels expressly or impliedly represents that the claims have been substantiated through various statements linking the safety and superiority claims to "studies or articles [that] have been published about the Sharpsmart system." *Id*. at ¶15.



Indeed, elsewhere Daniels essentially concedes a lack of confidence in the claim to be the world's safest sharps disposal system by equivocating that Sharpsmart is only "most likely the world's safest" sharps management system. *See* Ex. D to Counterclaim (see http://danielsinternational.com/customer-resources/brochure). *Id*. at ¶15.

Daniels now seeks dismissal of claims related to its core advertising, asserting that is mere puffery. ECF #18-20.

## LEGAL ARGUMENT

I.   **APPLICABLE STANDARDS ON THIS MOTION TO DISMISS FAVOR DENIAL OF THE MOTION BECAUSE WHETHER OR NOT A CLAIM IS EITHER `FALSE' OR `MISLEADING' IS A FACTUAL ONE DEPENDENT ON CONTEXT**

The Court should deny the motion to dismiss the counterclaims, as the question of whether or not a claim is either `false' or `misleading' is a factual one dependent on context. *See*

---

[2] *Geinosky v. City of Chicago,* 675 F. 3d 743 745 n.1 (7th Cir. 2012) (while a "motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," a counterclaimant like BD has "much more flexibility in opposing a Rule 12(b)(6) motion" and "may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove.").

Firm:45400632v1

*Ross*, 2012 U.S. Dist. LEXIS 155037, *20-22 (Kennelly, J.). In fact, in a Northern District of Illinois case that Daniels itself cites in its motion, *Champion Laboratories, Inc. v. Cent. Il Mfg. Co.*, 157 F. Supp. 3d 759, 763 (N.D. Ill. 2016), the Court noted that "the issue of puffery is not amenable to resolution on a motion to dismiss in this case" because the context of the statements must be examined. *Id*. (refusing to dismiss claim challenging assertion that "Only PetroClear filters are rigorously tested in the world's most extensive dispenser-filter research-and-development facility.").

As another Court in this District explained, Courts do not determine whether advertising is false or misleading:

> Regardless of the theory advanced by the plaintiff, "whether a claim is either `false' or `misleading' is an issue of fact rather than law." *Mead Johnson & Co. v. Abbott Labs.*, 209 F.3d 1032, 1034 (7th Cir.2000); [other citations omitted]; *see also Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500, 503 (7th Cir. 1999) (discussing confusion in the context of the FDCA, citing Lanham Act precedent and holding that "[w]hether a given message is confusing is ... a question of fact, not of law or logic."). Similarly, "[w]hether consumers are likely to be confused... is ultimately a question of fact" that "may be resolved on summary judgment only `if the evidence is so one-sided that there can be no doubt about how the question should be answered.'" *Auto-Zone[, Inc.. v. Strick]*, 543 F. 3d [923,] 929 [(7th Cir. 2008)](*quoting Packman v. Chicago Tribune Co*., 267 F.3d 628, 642 (7th Cir.2001); *Door Sys., Inc. v. Pro-Line Door Sys., Inc*., 83 F.3d 169, 171 (7th Cir.1996)). "It is not for the judge to determine, based solely upon his or her own intuitive reaction, whether the advertisement is deceptive." [citation omitted]. Rather, the question is "what does the person to whom the advertisement is addressed find to be the message? That is, what does the public perceive the message to be?"

[*LG Electronics*, 661 F. Supp. 2d at 948][3]

Additionally, as Judge St. Eve noted in *In Re Rust-Oleum Restore Mktg., Sales Practices*, 155 F.

---

[3] For example, an advertising claim that defendant's motor oil provided 'longer engine life and better engine protection," was not immune as puffing because "[h]ere, the claim is both specific and measurable by comparative research." *Castrol Inc. v. Pennzoil Co*., 987 F.2d 939, 945-948, (3d Cir. 1993) ("There was "ample evidence adduced at trial to prove that [defendant's] claims of superior protection against engine wear were literally false.") (*cited with approval* in *LG Electronics*).

Firm:45400632v1

Supp. 3d 772 (N.D. Ill. 2016), an assertion of puffery "is a defense and Plaintiffs are not required to anticipate or plead around defenses in their Complaint." *Id.* at 817; *see also Balik v. Blitt & Gaines, P.C.*, 2015 U.S. Dist. LEXIS 20869,*3, 2015 WL 764013 (N.D. Ill. 2015) (Kennelly, J.) (same).

Finally, in assessing the context, and whether granting of such a motion is appropriate, the Court must recall (as one can be sure it does) that:

> A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint [or counterclaim] by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). To survive dismissal, a "complaint must contain sufficient factual matter [] to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In considering a motion to dismiss, the Court "construe[s] the complaint [or counterclaim] in the light most favorable to the plaintiff [or counterclaimant]," accepting as true all of [the] factual allegations and draws all plausible inferences in its favor. *Peters v. West*, 692 F.3d 629, 632 (7th Cir. 2012) (internal quotation marks omitted).
>
> [*GC2 Incorporated v. International Game Technology PLC*, 255 F. Supp. 3d 812, 818 (N.D. Ill. 2017) (Kennelly, J.)]

Under such standards, this Court should deny the motion to dismiss the counterclaim.

II.    **THE COURT CANNOT CONCLUDE AS A MATTER OF LAW THAT DANIELS' SAFETY AND ENVIRONMENTAL CLAIMS ARE MERE PUFFERY, ESPECIALLY WHERE THE COURT MUST CONSTRUE THE COUNTERCLAIM IN THE LIGHT MOST FAVORABLE TO BD, ACCEPTING AS TRUE ALL OF BD'S FACTUAL ALLEGATIONS AND DRAWING ALL PLAUSIBLE INFERENCES IN BD'S FAVOR**

BD's false advertising claims do not rest upon wisps of puffery by Daniels, but rather are directed at Daniels' focused, repeated and consistent attempts to differentiate Daniels' products from those of its competitors based on unsubstantiated claims of superior safety and superior environmental attributes.  To plead a  false advertising claim under Section 43(a) of the Lanham

Act, a party must allege: (1) a false or misleading statement of fact was made in a commercial advertisement about its own or another's product; (2) the statement actually deceives or has the tendency to deceive a substantial segment of its audience; (3) the deception is material in that it is likely to influence a purchasing decision; (4) the defendant caused the false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result, either by direct diversion of sales from itself to defendant or by a loss of goodwill that is associated with its products. *Hot Wax, Inc. v. Turtle Wax*, 191 F.3d 813, 819 (7th Cir. 1999); 15 U.S.C. § 1125(a)(1)(B). BD has done so.

Further, a "'claim is conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated. '"*LG Electronics USA, INC. v. Whirlpool Corp.*, 661 F. Supp. 2d 940, 949 (N.D. Ill. 2009) (*citing Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 35 (1st Cir. 2000) (holding that a statement that "invites consumers to compare Ace's whitening power against either other detergents acting alone or detergents used with chlorine bleach…is a specific, measurable claim, and hence not puffing."). One can analyze such advertisements as "establishment claims," as opposed to "non-establishment claims," where the challenged advertisement makes independent claims (*e.g.*, our cough syrup starts to work the instant you swallow) or comparison claims (our product works faster than theirs). *Thermal Design, Inc. v. Guardian Bldg. Prods.*, 2012 U.S. Dist. LEXIS 83301, *13 (E.D. Wisc. 2012) (citing *Hot Wax*, 191 F.3d. at 1090). For establishment claims, statements in the form of "'tests show x' are literally false if tests do not establish 'x.'" *Id.* Thus, one must justify an implied establishment claim just as one would have to substantiate an express one. Daniels' statements invite such comparisons repeatedly. ECF #14 (Counterclaim, paras. 11-15, Exs. B-D); Flynn

Declaration, Ex. A.  Where, as here in the medical device/sharps disposal market, safety, injury prevention, and environmental friendliness are market drivers and differentiators,[4] such express and implied claims of superiority are not mere puffery. *See* Points II.A and B below.

    A.  <u>Daniels' Safety Claims Are False, Misleading, Unsubstantiated, and Actionable</u>

    Daniels' reference to having a "safer" system and the "safest" system are directly connected to supposedly "dramatic findings" in a fifteen year old study, and so are establishment claims within the stated context.  This is especially so at the motion to dismiss stage, where BD, as the non-movant, benefits from any doubt as to the scope of the pleadings and allegations. *GC2,* 255 F.Supp. at 818.  Indeed, despite Daniels' assertions, courts do not view safety claims such as these as mere puffery; as one Court in this district noted, a statement that "at the very least conveys the safety of the [product] to the consumer… cannot be puffery." *Adkins v. Nestle Purina PetCare Co.*, 973 F.Supp. 2d 905, 919 (N.D. Ill. 2013).  *Accord, LA Taxi Cooperative v. Uber Technologies*, 114 F.Supp. 3d 852, 861-62 (N.D. Cal. 2015) (advertising "that makes a claim as to the specific or absolute characteristics of a product, may be an actionable statement of fact"; denying motion to dismiss false advertising claims directed at statements such as "Uber claims that it is 'setting the strictest safety standards possible,' that its safety is 'already best in class,'" and that Uber safety standards are "industry-leading." and more "rigorous" than

---

[4] As the Supreme Court noted in *Pom Wonderful LLC v. Coca-Cola Co*., 134 S. Ct. 2228 (2014), "The Lanham Act and the FDCA complement each other in major respects, for each has its own scope and purpose. Although both statutes touch on food and beverage labeling, the Lanham Act protects commercial interests against unfair competition, while the FDCA protects public health and safety… Lanham Act suits draw upon this market expertise by empowering private parties to sue competitors to protect their interests on a case-by-case basis. By "serv[ing] a distinct compensatory function that may motivate injured persons to come forward," Lanham Act suits, to the extent they touch on the same subject matter as the FDCA, "provide incentives" for manufacturers to behave well." *Id*. at 2238-39; *accord Church & Dwight Co. v. SPD Swiss Precision Diag*., 104 F. Supp. 3d 348, 357-362 (S.D.N.Y. 2015) ("These conclusions all apply with equal force to Lanham Act claims relating to medical devices"; refusing to dismiss Lanham Act claims).

competitors); *X-It-Products v. Walter Kiddle Portable Equipment*, 155 F.Supp. 2d 577, 629-630 (E.D. Va. 2001) (claim that fire ladder is "safe" is not puffery; denying Motion to Dismiss, for Judgment on the Pleadings, and for Summary Judgment)

As the *LA Taxi* court noted, a "reasonable consumer reading these statements in the context of Uber's advertising campaign could conclude that an Uber ride is objectively and measurably safer than a ride provided by a taxi or other competitor service, i.e., it is statistically most likely to keep riders from harm." *Id*. at 861. As in *LA Taxi*, this Court should conclude that, "[a]t this stage in the litigation, the Court cannot conclude that the challenged statements, considered together, are all 'exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely.' [citation omitted] Defendants' argument that the complaint should be dismissed in its entirety for failure to plead an actionable statement therefore fails." *Id*. at 862, *accord Delux Cab v. Uber Techs., Inc.,* 2017 U.S. Dist. LEXIS 57494, *11-12 (S.D. Cal. 2017); and see In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales, Practices, and Prods. Liab. Litig.*, 754 F.Supp.2d 1145, 1177 (C.D. Cal. 2010) ("[T]he allegations about product safety are more than `mere puffery' that Toyota's cars were superior to others. They constitute a campaign by Toyota in which it represented itself as prioritizing (even `obsessing over') safety.")

Notably, the main decision upon which Daniels relies (and to which it quotes liberally in its brief), *Tylka v. Gerber Products Co.*, 1999 WL 495126 (N.D. Ill. July 1, 1999), was vacated and remanded on other grounds almost 18 years ago (which Daniels fails to mention). *See Tylka v. Gerber Prods. Co.*, 211 F.3d 445 (7th Cir. 2000) (vacating the District Court's judgment and remanding the matter with instructions to further remand the case to state court). But in any event, the Daniels' statements at issue here are much more akin to the statements in the Taxi cases, *Castrol, Toyota,* and *Adkins*, *supra*, than those statements concerning "optimum nutrition"

12

in the long-null-and-void *Tylka*.  Consequently, the Court should deny the motion.

   B. Daniels' Environmental Claims Are False, Misleading, Unsubstantiated, And
      Actionable

Daniels' various assertions of environmental superiority are also no mere puffery. Pursuant to Federal Trade Commission Act ("FTCA"), § 5, the FTC has issued the so-called "Green Guides" governing Environmental Marketing Claims. 16 C.F.R. §§ 260.1–260.8. Under the Green Guides, environmental claims must be substantiated: "any party making an express or implied claim that presents an objective assertion about the environmental attribute of a product, package or service must, at the time the claim is made, possess and rely upon a reasonable basis substantiating the claim." *Id.* § 260.5.  The Green Guides establish regulatory requirements for substantiation of certain environmental claims—sometimes with specific evidence.

While the counterclaims here are under the Lanham Act and state law, this FTC guidance illustrates what is expected and understood in and for the marketplace when companies like Daniels make such claims in their advertising.  As this Court has already noted, "the environment, energy, economic policy, or individual health and safety" are both matters of public concern and topics within the false advertising ambit of the Lanham Act. *Underground Solutions, Inc. v. Palermo*, 188 F. Supp. 3d 717, 726 (N.D. Ill. 2016) (Kennelly, J.).  Thus, in advertising its product as "eco-friendly" and as the "most environmentally responsible sharps management system in the world" and so on, Daniels is making a claim of relative and absolute characteristics of its product, which are actionable statements of fact not appropriate to dismiss on a motion under Rule 12(b)(6), *see* e.g. pp. 11-13, *supra*, especially where Daniels' references to such matters are directly connected to supposedly supporting studies and statistics, and so are establishment claims within the stated context.

The Court should deny the present motion.

Firm:45400632v1

III.    **GRANTING THE MOTION TO DISMISS THE COUNTERCLAIM WOULD CREATE LAW OF THE CASE AND JUDICIAL ESTOPPEL REQUIRING DISMISSAL OF THE COMPLAINT AS WELL**

Daniels' motion invites this Court to establish as law of the case that "'comparison' to a mystery rival is just puffery; it is not falsifiable and therefore is not informative." ECF#19 (Plaintiff Brief at 8). "The law-of-the-case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Kovacs v. United States*, 739 F.3d 1020, 1024 (7th Cir. 2014) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, 108 S. Ct. 2166, 100 L. Ed. 2d 811 (1988))." *PA. Chiropractic v. Blue Cross Blue Shield*, 188 F. Supp. 3d 776 (ND Illinois 2016) (Kennelly, J.). If Daniels is successful in convincing this Court to adopt such an analysis, Daniels is then estopped from eschewing or arguing against that rule as law of the case. *See Shuffle Tech International LLC v. Scientific Games Corporation*, 2017 U.S. Dist. LEXIS 141445 (N.D. Ill. 2017) ("SHFL is correct that a party who has assumed a position in a legal proceeding cannot later assume a contrary position, especially if it would prejudice the opposing party. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). This rule, however, is based on the doctrine of judicial estoppel, and it also requires that the court accepted the earlier position such that its acceptance of the new position would lead to inconsistent determinations."). Because the BD advertising the Daniels challenges never mentions Daniels and is the equivalent of what Daniels has labeled "a comparison to a mystery rival," adopting Daniels' analysis to dismiss the counterclaim would require dismissal of the complaint as well. Sauce for the goose is sauce for the gander, as the saying goes. *See Harcourt Brace*, 26 F. 3d at 952; *see Stewart v. Evanston Insurance Company*, 2015 U.S. Dist. LEXIS 66825 *31-35 , 2015 WL 2451181 (applying law of the case doctrine would require dismissal; ordering plaintiff to show cause why dismissal should not occur).

14

## <u>CONCLUSION</u>

**WHEREFORE**, for the foregoing reasons, BD respectfully requests this Court DENY

Daniels' Motion to Dismiss BD's Counterclaim.

Respectfully submitted,

BECTON DICKINSON AND COMPANY

By: /s/ *James P. Flynn*

                        One of Its Attorneys, Dated:

February __, 2018

| | |
|---|---|
| Peter A. Steinmeyer, #6211874 | James P. Flynn, New Jersey Bar #015451990 |
| **Epstein Becker & Green, P.C.** | Jennifer Barna, New Jersey Bar #045781996 |
| 150 N. Michigan Ave., 35th Floor | **Epstein Becker & Green, P.C.** |
| Chicago, Illinois 60601 | One Gateway Center, 13th Floor |
| (312) 499-1400 | Newark, NJ 07102 |
| (312) 827-9517 (fax) | (973) 639-8285 |
| psteinmeyer@ebglaw.com | (973) 639-8931 (fax) |
| | jflynn@ebglaw.com |

Firm:45400632v1

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney certifies that, on February 7, 2018 he caused the foregoing Defendant/Counterclaimant Becton, Dickinson And Company, Inc.'s Memorandum In Opposition To Plaintiff Counter-Defendant Daniels Sharpsmart's Motion To Dismiss The Counterclaim to be filed with the Court via the ECF system, which served a copy on all counsel of record.

s/*James P. Flynn*

Dated: February 7, 2018

16